# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | |
|---|---|
| **REX I. HATFIELD,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 5:18-00420 |
| **UNITED STATES OF AMERICA,** | ) |
| **Defendant.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16), filed on June 6, 2018. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States in moving to dismiss. (Document No. 18.) Plaintiff filed his Response in Opposition on June 21, 2018. (Document No. 20.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" should be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2018, Plaintiff, acting *pro se*, filed his "Motion for Damages and Supporting Brief Pursuant to 18 U.S.C. § 4126, Inmate Accident Compensation Act," which this Court construed as a Complaint seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq*. (Document No. 2.) Plaintiff seeks monetary relief due to an eye injury

he suffered while working at FCI Beckley. (Id.) Plaintiff alleges that the United States and UNICOR were negligence when "they failed to follow proper procedures when Plaintiff was injured." (Id.) Plaintiff further states that medical personnel were negligence when they failed to properly treat Plaintiff's eye injury. (Id.) As a result, Plaintiff states that he suffered scarring and permanent damage to his eye. [1] (Id.)

On the same day, Plaintiff also filed his instant Motion for a Temporary Restraining Order or Preliminary Injunction. (Document No. 3.) In his Motion, Plaintiff requested "an injunction restraining defendant, United States of America, from taking action to transfer or otherwise hinder him from pursuing the pending Motion for Damages Pursuant to 18 U.S.C. § 4126, Inmate Accident Compensation." (Id.) Plaintiff stated that he believed an injunction was necessary "to preserve the jurisdiction of this Court in that Plaintiff has been threatened with transfer." (Id.) By "Order and Notice" filed on March 13, 2018, the undersigned notify Plaintiff of the procedure for filing a claim under the Inmate Accident Compensation Act ["IACA"] and instructed Plaintiff notify the Court as to whether he intended to pursue his claim under the IACA or the FTCA. (Document No. 5.) On March 26, 2018, Plaintiff notified the Court that he wished to pursue his claim under the FTCA. (Document No. 6.) By Order entered on March 30, 2018, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 7.) The Clerk issued process on the same day. (Document No. 9.) By Proposed Findings and Recommendation also entered on March 30, 2018, the undersigned

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

recommended that the District Court deny Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction (Document No. 3) and refer the matter back to the undersigned for further proceedings. (Document No. 8.) By Memorandum Opinion and Order entered on April 30, 2018, United States District Judge Irene C. Berger adopted the undersigned's recommendation and denied Plaintiff's Motion for a Temporary Restraining Order or Preliminary Injunction. (Document No. 13.)

On June 6, 2018, the United States filed its "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 16 and 17.) The United States argues that Plaintiff's FTCA claim should be dismissed based on the following: (1) "The Inmate Accident Compensation Act provides the exclusive remedy for Plaintiff's injuries and the medical treatment of his injuries" (Document No. 17, pp. 7 – 8.); and (2) Even assuming Plaintiff could seek relief under the FTCA, Plaintiff failed to exhaust under the FTCA (Id., pp. 9 – 11.) and his "claim is barred by the statute of limitations" (Id., pp. 11 – 12.).

As Exhibits, the United States attaches the following: (1) The Declaration of Tiffanie Little (Document No. 16, pp. 4 - 5.); (2) A copy of Plaintiff's "Public Information Inmate Data As of 05-03-2018" (Id., pp. 7 – 11.); (3) The Declaration of Dr. Dominick McLain (Id., p. 12.); and (4) A copy of Plaintiff's relevant medical records (Id., pp. 14 – 210.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 7, 2018, advising him of the right to file a response to the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 18.) On June 21, 2018, Plaintiff filed his Response in Opposition. (Document No. 20.) As Exhibits, Plaintiff attaches the following: (1) Plaintiff's Declaration (Document No. 20-1, p. 1.); (2) A copy of a

3

"Rejection Notice – Administrative Remedy" dated September 20, 2017, from the Mid-Atlantic Regional Office Administrative Remedy Coordinator (Id., p. 3.); (3) A copy of the Certified Receipt sent to the Mid-Atlantic Regional Office dated September 5, 2017 (Id., p. 4.); (4) A copy of Plaintiff's "Claim for Damage, Injury, or Death" dated August 31, 2017 (Id., pp. 5 – 10.); (5) A copy of the Certified Receipt sent to the Bureau of Prisons dated October 2, 2017 (Id., p. 12.); (6) A copy of Plaintiff's letter dated September 27, 2017, addressed to the Bureau of Prisons stating that he was filing a "tort claim" – not an administrative appeal (Id., p. 13.); and (7) A copy of Plaintiff's pertinent medical records (Id., pp. 15 – 18.).

## **FACTUAL HISTORY**

On October 28, 2015, Plaintiff was injured while working at his prison job when a tool snapped apart and a piece of the tool struck him in the left eye. (Document No. 2) Plaintiff states that he immediately reported the incident to the UNICOR shop manager. (Id.) Plaintiff states that he then went to his housing unit where he experienced pain the entire evening. (Id.) The following day, Plaintiff reported to work and informed the shop manager that he needing to go to medical. (Id.) Later that morning, Plaintiff went to medical for his Chronic Care appointment and notified medical staff of his eye injury. (Document No. 16, pp. 24 – 29.) Plaintiff was examined by Dr. McLain, who noted that Plaintiff's left eye was red. (Id.) Dr. McLain directed that Plaintiff be seen by the optometrist, who was at the institution that day. (Id.) On the same day, Plaintiff was evaluated by Dr. Carr, a contract optometrist. (Id., pp. 30 – 33.) Plaintiff informed Dr. Carr that right before work concluded the day before, his eye started itching and burning. (Id.) Plaintiff reported that when he woke up "this morning, it was extremely red and has a foreign body sensation or possibly a cut place." (Id.) Dr. Carr examined Plaintiff's eye noting a "5 mm jagged

4

laceration of the bulbar conjunctiva to the temporal side OS." (Id.) It was noted that "the conjunctive had a 5mm x 4mm flap that was mobile," along with "an associated conjunctiva hemorrhage present in the same area." (Id.) Dr. Carr determined that Plaintiff had an ocular laceration without prolapse of the intraocular tiss. (Id.) Plaintiff was prescribed gentamicin ointment three times a day for 14 days and instructed on how to patch his eye. (Id.) Dr. Carr further submitted a consultation request for an appointment with an ophthalmologist. (Id.)

On November 5, 2015, Plaintiff was evaluated by Dr. Sadat, an outside ophthalmologist. (Id., pp. 95 – 98.) Dr. Sadat prescribed antibiotic drops and ointment to use in the eye for fourteen days. (Id.) Dr. Sadat further determined that Plaintiff was preglaucoma. (Id.) Plaintiff returned to the prison the same day and his medications were filled. (Id., pp. 21 – 23.) On December 1, 2015, Plaintiff had an injury assessment in medical for a work-related injury to his finger. (Id., pp. 18 – 19.) Plaintiff advised medical staff that he drilled into his finger. (Id.) Medical staff noted a puncture wound to Plaintiff's finger, which was cleaned and bandaged. (Id.)

On December 10, 2015, Plaintiff was evaluated by Dr. Carr for a follow-up on his eye. (Id., pp. 15 – 16.) Plaintiff advised that he had been using the drops and denied any irritation or discomfort. (Id.) Plaintiff, however, complained of decreased side vision temporally in the left eye. (Id.) Dr. Carr examined Plaintiff noting that the ocular laceration was resolved, but Plaintiff was preglaucoma. (Id.) Dr. Carr directed Plaintiff to follow-up in one week. (Id.)

On January 7, 2016, Plaintiff evaluated by Dr. Carr. (Id., pp. 165 - 167.) Dr. Carr noted elevated scarring of the bulbar conjunctiva due to the previous laceration and mild dry eye due to disruption of the tear film. (Id.) A VF 30-2 was conducted to screen for glaucoma, which showed a nasal step OD consistent with glaucomatic changes. (Id.) Finally, Dr. Carr noted that the OS had

an absolute quadrantopsia in the inferior temporal field causing a visual field defect. (Id.) Dr. Carr directed that Plaintiff be referred to a neurologist for evaluation to determine the cause of the defect, which he believed was most likely due to a mass, aneurism, or infarct of the optic nerve pathway. (Id.) On February 8, 2016, Plaintiff was evaluated by Dr. Vaught, a neurologist, concerning his unilateral vision loss. (Id., pp. 152, 163, 198-99.) Dr. Vaught recommended that MRIs be performed on Plaintiff's brain and orbits. (Id.) Dr. Vaught requested that Plaintiff return for evaluation following the MRIs. (Id.)

On April 12, 2016, Plaintiff was evaluated by Dr. McLain during a Chronic Care visit. (Id., pp. 143 - 146.) Concerning Plaintiff's left eye, Dr. McLain noted that Plaintiff had been evaluated by Dr. Vaught for left sided visual field loss. (Id.) Dr. McLain noted that Dr. Vaught had recommended an MRI of the brain and the orbits, with and without contract. (Id.) Dr. McLain stated that the MRIs were approved and would be conducted. (Id.)

On May 20, 2016, an MRI was conducted on Plaintiff's brain. (Id., p. 132, 195-96.) On August 18, 2016, an MRI was conducted on Plaintiff's left eye. (Id., pp. 125 - 128.) On August 18, 2016, Plaintiff was seen by Dr. Vaught for a follow-up appointment. (Id., pp. 190 – 191.) Dr. Vaught noted that an exam revealed a left inferior quadrantanopia area. (Id.) Dr. Vaught reviewed Plaintiff's MRIs noting that the brain MRI revealed some minimal microvascular ischemic changes, but no evidence of a mass, stroke, tumor, or lesion. (Id.) Dr. Vaught stated that he believed Plaintiff's left visual field defect was an eye problem and not a neurological problem. (Id.) Dr. Vaught recommended that Plaintiff be evaluated by an ophthalmologist. (Id.)

On September 29, 2016, Plaintiff was evaluated by Dr. McLain during a Chronic Care visit. (Id., pp. 119 – 124.) Concerning Plaintiff's left eye, Dr. McLain noted Plaintiff complained of

problems with peripheral visions on his left eye and his vision screening showed inferotemporal quadrantanopia. (Id.) Dr. McLain noted that Plaintiff had a visual field defect to the left eye for a while and a previous laceration to the bulbar conjunctiva. (Id.) Dr. McLain informed Plaintiff that his recent MRI showed no significant problems causing the defect and discussed that the neurologist "felt it was an eye issue and not an extrinsic issue causing the problem." (Id.) Dr. McLain submitted a consult request for referral to an ophthalmologist for further evaluation. (Id.)

On October 18, 2016, Plaintiff was evaluated by Dr. Husevin Kadikoy at CAMC Ophthalmology concerning his complaint of decreased vision OS laterally. (Id., pp. 116-18, and 182.) Plaintiff reported that he had a prior injury to the left eye where a piece of metal went into his eye causing a cut. (Id.) Plaintiff stated that since that time, he has noticed that his peripheral vision was decreased. (Id.) Plaintiff further complained that when his left eye gets dry, it feels as if a foreign body is in it. (Id.) Dr. Kadikoy diagnosed Plaintiff with primary open angle glaucoma, cataracts, and chronic dry eyes. (Id.) Dr. Kadikoy further offered selective laser trabeculoplasty for Plaintiff's eyes. (Id.) On October 27, 2016, Dr. McLain submitted a consult request for selective laser trabeculoplasty for Plaintiff's eyes. (Id., p. 115.) On November 15, 2016, Plaintiff underwent laser surgery (trabeculoplasty) to his left eye at CAMC Ophthalmology in Charleston, West Virginia. (Id., pp. 112-13, 178.) On November 23, 2016, Plaintiff underwent laser surgery (trabeculoplasty) to his right eye at CAMC Ophthalmology. (Id., pp. 109-10 and 176.) On December 9, 2016, Dr. McLain noted that Plaintiff needed a follow-up with CAMC Ophthalmology and submitted a consult result. (Id., p. 108.)

On August 1, 2017, Plaintiff was again evaluated by Dr. Kadikoy at CAMC Ophthalmology for his 6-month glaucoma check. (Document No. 20-1, pp. 15 – 18.) Dr. Kadikoy

7

educated Plaintiff about his diagnosis and treatment for primary angle glaucoma, dry eyes, and cataracts. (Id.) Dr. Kadikoy prescribed Latanoprost drops at bedtime for the primary angle glaucoma. (Id.) Dr. Kadikoy noted that he needed Plaintiff's medical records concerning the eye injury in 2015 because this "injury might be contributing to the quadronopsia." (Id.) Plaintiff was instructed to follow up in two months. (Id.) By Administrative Note entered on September 20, 2017, it was noted that Plaintiff had been seen by Dr. Kadikoy at CAMC Ophthalmology concerning his primary angle glaucoma. (Document No. 16, pp. 207 – 210.) It was noted that Plaintiff was started on Latanoprost drops and instructed to follow-up in two months. (Id.)

On November 2, 2017, Dr. Carpenter performed an optometry exam of Plaintiff concerning his glaucoma. (Id., pp. 204 --.) Dr. Carpenter's assessment was preglaucoma and "congruous inferior altitudinal defects both eyes vs fat bjerum defects from glaucoma. (Id.) Dr. Carpenter noted that Plaintiff's inferior altitudinal defects were consistent with neurological pathology instead of Plaintiff's degree of glaucoma, but noted that Plaintiff's MRI reports were negative as to neurological pathology. (Id.) Dr. Carpenter instructed Plaintiff to follow up in 3 months. (Id.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted

8

as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

In its Motion, the United States argues that the Inmate Accident Compensation Act "provides the exclusive remedy for Plaintiff's injuries and his medical treatment." (Document No. 17, pp. 6 – 8.) The Untied States asserts that Plaintiff "cannot recover under the FTCA for the injuries he sustained while performing his job duties at FCI Beckley." (Id.) The United States contends "[t]here is no dispute in this case that Plaintiff's injury was a work-related injury." (Id.) Additionally, the United States asserts that "recovery is also barred under the FTCA for the alleged negligent treatment of work-related injuries." (Id.) Accordingly, the United States argues that Plaintiff's FTCA claim must be dismissed for lack of subject matter jurisdiction because Plaintiff's exclusive remedy is through the IACA. (Id.)

In his Response, Plaintiff argues that his case should not be dismissed. (Document No. 20, pp. 2 - 4.) Plaintiff states "[t]his tort claim is against the United States for negligence of its employees." (Id.) Plaintiff complains that he attempted to start the IACA progress in April 2016, but he was informed that he could not "file an IACA claim because there was no accident report filed by UNICOR or Medical." (Id.) Plaintiff states that he filed an Administrative Remedy Resolution Form dated April 24, 2017, to give the BOP an opportunity to file an accident report. (Id.) Citing Plaintiff's Exhibit E3, Plaintiff states that UNICOR Supervisor Thomas Kilgore denied his request on May 30, 2017, finding that Plaintiff's injury was not work related and the report prepared in medical was false. (Id.) Thus, Plaintiff contends that BOP staff are preventing Plaintiff

10

from seeking relief under the IACA. (Id.) Plaintiff, therefore, argues that he should be allowed to seek relief under the FTCA. (Id.)

The Inmate Accident Compensation Act provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Federal prisoners, however, cannot recover under the FTCA for work-related injuries as the Prison Industries Fund, 18 U.S.C. § 4126, provides the exclusive remedy for injuries incurred in work-related incidents. See United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Recovery is barred under the FTCA for the work-related injury itself and for the negligent treatment of that injury. Vander v. U.S. Dept. of Justice, 268 F.3d 661 (9th Cir. 2001); also see Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 (3rd Cir. 2007)(finding that a claim brought in connection with subsequent negligence of prisoner doctors, rather than the initial work-related injury, is barred by Section 4126); Wooten v. United States, 825 F.2d 1039, 1044 (6th Cir. 1987)("Section 4126 is also the exclusive remedy when a work-related injury is subsequently aggravated by negligence and malpractice on the part of prison officials."); Thompson v. United States, 495 F.2d 192, 193 (5th Cir. 1974)("Despite the appellant's allegation that the negligence of the hospital worker occasioned further injuries, for which he seeks damages, he is barred from litigating the matter under the [FTCA] since the cause of his original injury was work-related and compensable under 18 U.S.C. § 4126."); Cook v. United States, 2012 WL 5383395 (D.S.C. Nov. 1, 2012), aff'd.,530 Fed.Appx 217 (4th Cir. 2013), cert. denied, ___ U.S. ___, 134 S.Ct. 1292, 188 L.Ed.2d 319 (2014)("The Inmate Accident Compensation Act is also the exclusive remedy for negligent treatment of federal prisoners' work-related injuries."). A "work-related injury" is

"defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "Work location" is defined by the BOP as "any place that inmate is authorized to be performing his assignment." BOP Program State 1600.09. "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam). Section 4126 not only covers injuries incurred while working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, supra, 268 F.3d at 664; Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987); Aston, 625 F.2d at 1211. Section 301.301(c), however, provides that "compensation shall not be paid for injuries suffered away from the work location (e.g., while the claimant is going to or leaving work, or going to or coming from lunch outside of the work station or area)." 28 C.F.R. § 301.301(c).

Courts have broadly construed the term "work-related" injury. In Baynes v. United States, 302 Fed.Appx. 334 (6th Cir. 2008), the Sixth Circuit determined that an injury occurring during a trip to or from a job site, while on-the-clock, was a work-related injury. Baynes, 302 Fed.Appx. at 335-36; also see Payton v. United States, 2011 WL 3240487 (E.D.N.C. July 28, 2011)(although the injury occurred while plaintiff was traveling to lunch, the court concluded the injury was work-related because the injury occurred while plaintiff was still on-the-clock and being paid.) In Wooten v. United States, 437 F.2d 79 (5th Cir. 1971), the Fifth Circuit determined that an inmate suffered a work-related injury where the inmate was injured on the work site while traveling to lunch. Wooten, 437 F.2d at 80(finding inmate suffered a work-related injury while traveling on an elevator on his way to lunch). Courts are generally unwilling to determine that an inmate's injury

12

is work-related absent evidence that the injury occurred during work activities, on the work site, or while the inmate was "on-the-clock." See Goforth v. United States, 2010 WL 3835541 (S.D.W.Va. Sep. 29, 2010)(denying summary judgment where there was "some evidence in the record to support [Plaintiff's] contention" that she was going to her job site at the time of her accident."); Codianni-Robles v. United States, 2005 WL 2098837, * 2 (D.Conn. Aug. 29, 2005)(the District Court denied the government's motion to dismiss finding inadequate evidence that plaintiff's injuries were work-related because "she had finished her work assignment earlier in the day" and a "different inmate was assigned to work at the time of her accident.").

 Based upon a review of the record, the undersigned finds that Plaintiff's injuries occurred while he was on the job and the injuries were "work-related." Plaintiff acknowledges that he was injured while working in UNICOR at FCI Beckley on October 28, 2015. (Document No. 2.) Plaintiff states that he was injured "when a tool he was using snapped apart [and] a piece of the tool struck him in the left eye." (Id.) Further, the United States does not dispute that Plaintiff's injury was "work-related." Plaintiff, however, appears to argue that the Court should allow him to proceed under the FTCA because UNICOR Supervisor Kilgore's administrative remedy response indicated that Plaintiff's injury was not work-related. First, the undersigned finds that statements made on medical records and administrative remedies "are not conclusive as to whether the plaintiff's injuries were work-related under the governing regulations." Codianni-Robles, 2005 WL 2098837 at * 2. Further, a review of Plaintiff's Exhibit E3 does not support a finding that UNICOR Supervisor Kilgore denied that Plaintiff's injury was work related. A review of Exhibit E3 reveals that UNICOR Supervisor Kilgore responded as follows: "Due to Inmate Hatfield not reporting his injury during the time of the incident in UNICOR, the accident report was done in

13

medical." (Document No. 2, p. 30.) Further, Plaintiff's medical records confirm that Plaintiff's left eye injury was reported to medical as a work-related accident/injury. (Document No. 2, p. 20 – 22.) To the extent Plaintiff is arguing that the IACA does not apply because BOP staff erroneously informed him that he was not covered by the IACA, such is without merit. The Court finds there is no estoppel against the United States for erroneous advice from a federal employee concerning an inmate's eligibility for benefits. See Office of Personnel Management v. Richmond, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)(stating that the erroneous advice given by a government employee to a benefits claimant could not estop the government from denying benefits not otherwise permitted by law).

Furthermore, Plaintiff can still timely file a claim under the IACA because he has not yet been released from custody.[2] Title 28 C.F.R. § 301.301(a) provides that "[n]o compensation for work-related injuries resulting in physical impairment shall be paid *prior to an inmate's release*." 28 C.F.R. § 301.301(a)(emphasis added). Subsection (b) provides that "[c]ompensation may only

---

[2] Although Federal regulations require that the work supervisor complete and forward a BP-140 injury report to the Institutional Safety Manager at the time of the injury (28 C.F.R. § 301.105(a)), the lack of such a BP-140 injury report does not preclude Plaintiff from obtaining relief under the IACA. *Johnson v. Stanley*, 2018 WL 1830731, * 5 (S.D. Ga. April 17, 2018)(finding that the BP-140 report is *not* a prerequisite for redress under the IACA). As stated below, Section 301.303(a) provides that an inmate must submit an FPI Form 43 Inmate Claim to the Institutional Safety Manager 45 days prior to his/her release in order to obtain accident compensation. 28 C.F.R. § 301.303(a). The Federal regulations further provide that a claimant may present evidence and witnesses in support of his/her claim, the Committee "shall consider all evidence presented by the claimant," and compensation determinations are made on "all available evidence." 28 C.F.R. §§ 301.305, 301.309, and 301.310. Thus, an award of compensation under the IACA is not contingent on the filing of a BP-140 injury report. To the extent Plaintiff is claiming that his work supervisor's failure to complete a BP-140 will preclude Plaintiff from obtaining compensation under the IACA for his work-related physical impairment, Plaintiff is incorrect.

be paid for work-related injuries or claims alleging improper medical treatment of a work-related injury." 28 C.F.R. § 301.301(b). Title 28 C.F.R. § 301.303 provides the time parameters for filing a claim. Subsection (a) provides as follows:

> No more than 45 days prior to the date of an inmate's release, but no less than 15 days prior to this date, each inmate who feels that a residual physical impairment exists as a result of an industrial, institution, or other work related injury shall submit a FPI Form 43, Inmate Claim for Compensation on Account of Work Injury. Assistance will be given the inmate to properly prepare the claim, if the inmate wishes to file. In each case a definite statement shall be made by the claimant as to the impairment caused by the alleged injury. *The completed claim form shall be submitted to the Institution Safety Manager or Community Corrections Manager for processing.*

28 C.F.R. § 301.303(b)(emphasis added). The BOP's Inmate Locator indicates that Plaintiff's projected release date is July 20, 2034. Based upon the foregoing, the undersigned finds that recovery under the FTCA is not available as the IACA provides the exclusive remedy for injuries incurring in work-related incidents. Thus, the undersigned recommends that the District Court grant the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." The undersigned finds it unnecessary to consider the other reasons that the United States has submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 16) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene

C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 29, 2018.

Omar J. Aboulhosn
United States Magistrate Judge